**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed February 12, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00560-CV

_____

**PATRICK O'BRIEN MURPHY AKA O'BRIEN MURPHY AND BEVERLY MURPHY, Appellants**

**V.**

**WELLS FARGO BANK, N.A. AND HSBC BANK USA, Appellees**

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-67808**

## DISSENTING OPINION

Today the court must decide whether article XVI, section 50(a)(6) of the Texas Constitution prohibits a trial court from awarding attorney's fees to a lender under the Texas Declaratory Judgments Act when the lender obtains declaratory relief regarding a nonrecourse home-equity loan and successfully defends the

borrowers' claim for declaratory relief regarding this loan. The majority concludes that it does. I respectfully disagree.

In this case, the lender successfully defended against the borrowers' claim for declaratory relief and, in addition, the lender obtained declaratory relief that it sought in its counterclaim. Therefore, section 37.009 of the Texas Civil Practice and Remedies Code, which governs the award of attorney's fees in declaratory-judgment actions, provides a proper statutory basis for the trial court's award of attorney's fees in the lender's favor. The promissory note and security instrument executed by the borrowers provide that, absent actual fraud, the borrowers cannot be personally liable under the note or under the security instrument. Under the unambiguous language of these instruments, the parties intended the debt in question to be an extension of credit under article XVI, section 50(a)(6) of the Texas Constitution. But neither of these facts prevents the lender from recovering attorney's fees under the Texas Declaratory Judgments Act. This court should affirm the trial court's award of attorney's fees to the lender.

**Texas Civil Practice and Remedies Code section 37.009 provides a proper statutory basis for the trial court's award of attorney's fees in the lender's favor.**

In the January 2006 transaction at issue in this case, appellee Wells Fargo Bank, N.A. (the "Bank") extended credit to appellants Patrick O'Brien Murphy a/k/a O'Brien Murphy and Beverly Murphy. The Murphys executed a "Texas Home Equity Adjustable Rate Note," a "Texas Home Equity Security Instrument," and a "Loan Agreement Notice" (collectively, the "Loan Documents"). The Murphys filed suit against the Bank, alleging the following:

- The Murphys were served in a different suit with an application under Texas Rule of Civil Procedure 736 for an order allowing foreclosure of a lien.

- The Bank is seeking foreclosure of its lien on the Murphys' homestead.

- In January 2006, the Murphys obtained a loan from the Bank and refinanced the existing mortgage on their home.

- An employee of the Bank promised the Murphys that if they accepted the loan from the Bank, the Murphys would be able to refinance the loan with the Bank after two years at a lower fixed rate of interest and with no additional closing costs.

- The Murphys relied upon this alleged oral promise in deciding to refinance the loan with the Bank.

- Before the two-year anniversary, the Murphys began requesting that the loan be refinanced in accordance with the Bank's alleged promise, but the Bank ignored the Murphys' requests.

- Just before the two-year anniversary of the loan from the Bank, the Bank demanded additional interest and escrow payments. The Murphys paid these amounts in January and February of 2008, while requesting the Bank to refinance the loan as the Bank allegedly had promised.

- The Murphys are prepared and able to pay the past due principal and interest at a lower rate in line with the Bank's alleged representations.

The Murphys suggest in their allegations that they paid the amounts due under the Loan Documents for two years and then asked the Bank for the refinancing that it allegedly had promised. In their petition, the Murphys requested a declaratory judgment that the Bank and its successors are not entitled to foreclose the lien on the Murphys' homestead. The Murphys also sought specific performance of the Bank's

alleged promise to refinance the loan.[1]   Even though the Murphys cannot be held personally liable under the Loan Documents, the Murphys requested attorney's fees under the Texas Declaratory Judgments Act.

In response, the Bank counterclaimed, seeking declaratory relief under the same statute.   The Bank asserted that the alleged promise by an employee of the Bank did not excuse the Murphys' failure to comply with their obligations under the Loan Documents.   The Bank asked the trial court to declare that the Murphys were in default under the Loan Documents.   The Bank also sought attorney's fees under the Texas Declaratory Judgments Act both for defending against the Murphys' claim for declaratory relief and for prosecuting the Bank's counterclaim for declaratory relief.

In its motion for summary judgment, the Bank sought attorney's fees and costs under the Texas Declaratory Judgments Act.   The Bank sufficiently stated a summary-judgment ground[2] in which it sought attorney's fees and costs both for defending against the Murphys' claim for declaratory relief and for prosecuting the Bank's counterclaim for declaratory relief.[3]

---

[1]  In the alternative, the Murphys asserted damage claims based upon allegations of common-law fraud and violations of the Texas Deceptive Trade Practices Act.

[2]  Summary-judgment grounds may be stated concisely, without detail or argument.  *See Allen v. City of Baytown*, No. 01-09-00914-CV, 2011 WL 3820963, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.); *Coleman v. Revak*, No. 01-07-00438-CV, 2008 WL 2466276, at *2 (Tex. App.—Houston [1st Dist.] June 19, 2008, no pet.) (mem. op.); *Conquistador Petroleum, Inc. v. Chatham*, 899 S.W.2d 439, 441–42 (Tex. App.—Eastland 1995, writ denied).

[3]  In its motion, the Bank asked the trial court to "award [the Bank] all relief to which it is entitled, including attorney's fees and costs."   The Bank also stated that "[the Bank] is entitled to recover $116,505.75 in reasonable and necessary attorney's fees and court costs pursuant to section 37.009 of the Texas Civil Practice & Remedies Code because [the Bank] seeks declaratory relief" and "[a]s a result of this lawsuit being filed, [the Bank] was forced to retain the undersigned attorneys to provide legal services reasonably necessary to prosecute *and defend* this action." (emphasis added).

4

In its judgment, the trial court granted summary judgment, denied all relief sought by the Murphys, declared that the Murphys were in default under the Loan Documents, and awarded the Bank attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code. The Bank successfully defended against the Murphys' declaratory-judgment claim and obtained declaratory relief against the Murphys. Under section 37.009, the Bank was eligible for an award of attorney's fees on two bases: (1) as a party defending a claim for declaratory relief and (2) as a party who obtained declaratory relief. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 641–43 (Tex. 2005) (holding that appeal was not moot in light of trial court's discretion under section 37.009 to award attorney's fees to party seeking declaratory relief or defending against a claim for declaratory relief); *Petroleum Analyzer Co., L.P. v. Olstowski*, No. 01-09-00076-CV, 2010 WL 2789016, at *21 (Tex. App.—Houston [1st Dist.] Jul. 15, 2010, no pet.) (holding trial court properly awarded attorney's fees to party defending against claim for declaratory relief) (mem. op.); *Bradt v. State Bar of Texas*, 905 S.W.2d 756, 759–60 (Tex. App.—Houston [14th Dist.] 1995, no writ) (same as *Petroleum Analyzer Co., L.P.*). The trial court had discretion to award the Bank these fees on either basis. *See Hallman*, 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.*, 2010 WL 2789016, at *21; *Bradt*, 905 S.W.2d at 759–60.

On appeal, the Murphys assert that the substance of the Bank's declaratory-judgment claim is a claim for breach of the Loan Documents, and the majority agrees. In the Bank's declaratory-judgment claim, the Bank did not seek relief based upon the Murphys' failure to comply with the Loan Documents. Rather, the Bank sought declaratory relief regarding the Murphys' contention that the alleged promise by the Bank meant that, beginning in February 2008, the

5

Murphys did not have to comply with the Loan Documents. Significantly, the relief the Bank requested and obtained was declaratory relief, not breach-of-contract relief. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2013) (stating that, under the Texas Declaratory Judgments Act, a person interested under a deed, written contract, or other writings constituting a contract may have determined any question of construction or validity arising under the instrument or contract and obtain a declaration of rights, status, or other legal relations thereunder). Because the Bank successfully defended against the Murphys' declaratory-judgment claim and successfully prosecuted its own declaratory-judgment claim, the trial court had discretion to award the Bank attorney's fees under section 37.009. *See Hallman*, 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.*, 2010 WL 2789016, at *21; *Bradt*, 905 S.W.2d at 759–60.

The majority also concludes that the substance of the Murphys' declaratory-judgment claim was not a request for declaratory relief but rather a request for an injunction against the Bank to stop it from obtaining foreclosure of its lien on the Murphys' homestead. Thus, the majority suggests that the Bank cannot recover attorney's fees for defending against the Murphys' claim for declaratory relief because the Murphys were not asserting such a claim. In both their original and amended petitions, after noting that the Bank was seeking foreclosure, the Murphys "pray for declaratory judgment that [the Bank] or its successors are not entitled to foreclose on the debt," and the Murphys "request that they be awarded their attorneys fees for seeking this relief." In neither pleading do the Murphys request any injunctive relief. They do not request a temporary restraining order, a temporary injunction, or a permanent injunction. The words "injunction," "injunctive," and "equitable" are not found in either petition. In its motion for

6

summary judgment, the Bank mentioned that the Murphys were asserting a claim for declaratory relief, and the Bank did not state that the Murphys were seeking injunctive relief.[4] The majority indicates that the substance of the Murphys' petition includes a request for injunctive relief rather than declaratory relief because the Murphys' goal was to stop the foreclosure action. The Murphys may have filed this suit with the goal of stopping the pending foreclosure action brought by the Bank, but the Murphys were free to seek this goal by a variety of means, including the assertion of a claim for declaratory relief. Having this goal does not mean that the Murphys must have been seeking an injunction rather than declaratory relief.[5] Under the plain meaning of the language they chose in both of their petitions, the Murphys did not seek injunctive relief, and they did seek declaratory relief.

The majority also relies upon two cases in which the court held that a claimant asserting a breach-of-contract claim cannot add a declaratory-judgment claim that duplicates the relief already sought in the breach-of-contract claim, as a way of obtaining attorney's fees under section 37.009 if attorney's fees are not available under Chapter 38 of the Texas Civil Practice and Remedies Code. *See Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 489–90 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 258–59 (Tex. App.—Houston [14th Dist.] 1998, no pet.). These cases are not on point because the Bank has not asserted a claim for breach of contract or sought attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. The Bank

---

[4] The majority suggests that the Bank indicated in its motion that the Murphys were seeking injunctive relief rather than declaratory relief.

[5] Indeed, to date, the method chosen by the Murphys appears to have achieved this goal, despite the lack of any request for injunctive relief. The record indicates that more than four years have passed since the Murphys filed suit and that, so far, no foreclosure has occurred.

7

asserted only a claim for declaratory judgment; therefore, the cases upon which the majority relies do not apply. *See Cytogenix, Inc.*, 213 S.W.3d at 489–90; *Kenneth Leventhal & Co.*, 978 S.W.2d at 258–59

The Bank successfully defended against the Murphys' declaratory-judgment claim and successfully prosecuted its own declaratory-judgment claim. Accordingly, the trial court had discretion to award the Bank attorney's fees under section 37.009. *See Hallman*, 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.*, 2010 WL 2789016, at *21; *Bradt*, 905 S.W.2d at 759–60.

**The parties intended the debt to be an extension of credit so as to allow the lender to foreclose its lien on the debtors' homestead consistent with the Texas Constitution.**

Under the unambiguous wording of the Loan Documents, the Bank and the Murphys intended the Murphys' debt to the Bank to be an extension of credit under article XVI, section 50(a)(6) of the Texas Constitution. *See* Tex. Const. art. XVI, § 50(a)(6). If the debt has the characteristics of an extension of credit listed in this provision of the Texas Constitution, the Bank may obtain payment of the debt by enforcing its lien on the Murphys' homestead through a forced sale of the homestead. *See id.* To constitute an extension of credit under this provision, the debt must be "without recourse for personal liability against [the Murphys], unless [one of the Murphys] obtained the extension of credit by actual fraud." Tex. Const. art. XVI, § 50(a)(6)(C). Consistent with this requirement, the note the Murphys signed provides that "absent actual fraud, the Note Holder can enforce its rights *under this Note* solely against the property described above and not personally

8

against any owner of such property or the spouse of such owner."[6]  Likewise, the security instrument provides that "absent such actual fraud, Lender can enforce its rights *under this Security Instrument* solely against the property and not personally against the owner of the Property or the spouse of an owner."[7]

**Under the Texas Declaratory Judgments Act, the Texas Legislature gave the trial court authority to award attorney's fees to the lender, even though the debtors are not personally liable under the loan documents.**

The Texas Declaratory Judgments Act is a remedial statute.  Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 2013).   Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.  *Id*.   Courts are to liberally construe and administer this statute.  *Id*.   A court of record within its jurisdiction has the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. *Id*. § 37.003(a) (West 2013).   A person interested under a deed, written contract, or other writings constituting a contract may have determined any question of construction or validity arising under the instrument or contract and obtain a declaration of rights, status, or other legal relations thereunder.  *Id*. § 37.004(a) (West 2013).   The specific enumerations in sections 37.004 and 37.005 of the Civil Practice and Remedies Code do not limit or restrict the trial court's exercise of its general powers to grant declaratory relief in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty. *Id*. § 37.003(c) (West 2013).   In any proceeding under the Texas Declaratory Judgments

---

[6] (emphasis added).

[7] (emphasis added).

Act, the trial court may award reasonable and necessary attorney's fees as are equitable and just. *Id*. § 37.009 (West 2013).

Under the Texas Declaratory Judgments Act, a person interested in any deed or written contract may seek a declaratory judgment. *See id*. § 37.004; *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444–45 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In unambiguous terms this statute covers requests for declaratory relief regarding written contracts under which the debtors are not personally liable. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.003, 37.004; *Aquaduct, L.L.C.*, 116 S.W.3d at 444–45. Thus, the trial court had the power to render a declaratory judgment as to the Murphys' status under the Loan Documents and to award the Bank reasonable and necessary attorney's fees under section 37.009 of the Civil Practice and Remedies Code, even though the Murphys cannot be personally liable under the Loan Documents. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.003, 37.004, 37.009; *Aquaduct, L.L.C.*, 116 S.W.3d at 444–45.

Attorney's fees may be awarded only under a statute or under a contract that provides for their recovery. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009). The Loan Documents provide that the Murphys are not personally liable under those documents and thus they are not personally liable for attorney's fees. Accordingly, the Murphys are not personally liable to pay attorney's fees under a contract. But, the Loan Documents do not contain any language specifically precluding recovery of attorney's fees by the Bank under the Texas Declaratory Judgments Act; therefore, the Bank has not waived its right to recover attorney's fees against the Murphys under this statute. *See Herring v. Heron Lakes Estates Owners Assoc., Inc.*, No. 14-09-00772-CV, 2011 WL 2739517, at *6 (Tex. App.—Houston [14th Dist.] Jan. 4, 2011, no pet) (holding that for a contracting party to waive its right to recover statutory attorney's fees, the

contract must contain language specifically precluding recovery of attorney's fees under the statute in question) (mem. op.). The fact that the Murphys are not personally liable under the Loan Documents does not insulate them from personal liability for attorney's fees under the Texas Declaratory Judgments Act.[8] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Aquaduct, L.L.C.*, 116 S.W.3d at 444–45. The plain language of that statute vests the trial court with the power to award attorney's fees to the Bank and against the Murphys, even though the Murphys are not personally liable under the Loan Documents. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Aquaduct, L.L.C.*, 116 S.W.3d at 444–45.

**Nothing in article XVI, section 50(a)(6) of the Texas Constitution removes the trial court's authority to award attorney's fees to the lender, even though the debtors are not personally liable under the loan documents.**

In article XVI, section 50(a)(6) of the Texas Constitution, the people of Texas provide in pertinent part:

---

[8] The majority argues that, under the unambiguous language of Section 9 of the Security Instrument, this provision supplies the exclusive remedy for the Bank to recover attorney's fees in legal proceedings within the scope of Section 9. *See ante* at p. 11, n.5. Under Section 9, amounts paid by the Bank that fall within the scope of this provision become additional nonrecourse debt of the Murphys. The majority asserts that the analysis in this dissent conflicts with Section 9 of the Security Instrument. The Murphys have not asserted this argument, or any other under Section 9, either in the trial court or on appeal. Even presuming that the attorney's fees awarded to the Bank fall within the scope of Section 9, the only amounts that become additional debt are "[a]ny amounts disbursed by [the Bank] under this Section 9," and these amounts only become payable "upon notice from [the Bank] to [the Murphys] requesting payment." The record contains no evidence showing that the Bank treated these attorney's fees as being disbursed under Section 9 or that the Bank requested payment of these amounts under that provision. In any event, the recovery of attorney's fees by the Bank under section 37.009 does not conflict with the language of Section 9. Nothing in Section 9 states that the remedy provided therein is the exclusive remedy of the Bank. To find a waiver of the Bank's right to recover attorney's fees under section 37.009, there must be specific language in the Loan Documents precluding recovery of attorney's under this statute. *See Herring*, 2011 WL 2739517, at *6. The Loan Documents contain no such language.

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

. . .

(6) an extension of credit that:

. . .

(C) is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud . . . .

Tex. Const. art. XVI, § 50(a). In interpreting the Texas Constitution, courts are to rely heavily on the literal text and must give effect to its plain language. *Republican Party of Texas v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997). Under this provision of the Texas Constitution, a homestead is protected from forced sale for the payment of all debts except for the eight types listed in article XVI, section 50(a) of the Texas Constitution. *See* Tex. Const. art. XVI, § 50(a). One of these categories of debts is an "extension of credit" under article XVI, section 50(a)(6). *See* Tex. Const. art. XVI, § 50(a)(6). If a debt does not have all of the characteristics of an "extension of credit" or one of the other seven types of debt listed in this part of the Texas Constitution, then the debtor's homestead is not subject to a forced sale to pay the debt. *See id.* If a debt has all of the characteristics of an "extension of credit," then the debtor's homestead is subject to a forced sale to pay the debt. *See id.* One of these characteristics is that the debtor not be subject to personal liability for the debt. *See id.* Under the unambiguous language of the Loan Documents, the Murphys and the Bank intended the Loan Documents to be an extension of credit under article XVI, section 50(a)(6) of the Texas Constitution. For this reason, the Loan Documents provide that absent actual fraud, the holder of the debt can enforce its rights under the Loan Documents solely

12

against the Murphys' homestead and not personally against the Murphys. [9] Applying the plain meaning of its text, nothing in article XVI, section 50(a) of the Texas Constitution provides that trial courts lack the power to order debtors under an extension of credit to pay a creditor's attorney's fees under the Texas Declaratory Judgments Act. *See id.* This part of the Texas Constitution speaks to when a creditor can obtain a forced sale of the debtor's homestead to pay the debt. *See id.* It does not address whether the Legislature may enact statutes giving courts the power to hold debtors personally liable for attorney's fees in declaratory-judgment proceedings. *See id.* Thus, when article XVI, section 50(a)(6) of the Texas Constitution took effect in 1998, it did not invalidate section 37.009 of the Texas Civil Practice and Remedies Code as to declaratory-judgment actions regarding extensions of credit. *See id.* The majority errs in concluding that this constitutional provision conflicts with section 37.009 of the Texas Civil Practice and Remedies Code. *See ante* at pp. 8–12.

To support this conclusion, the majority cites *Fein v. R.P.H., Inc.*, a case in which this court held that a debtor under a nonrecourse note was not personally liable under the note. *See* 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). In *Fein*, no party sought attorney's fees in a declaratory-judgment action regarding the nonrecourse note. *See id.* The *Fein* case is not on point.

---

[9] The majority states that the nonrecourse status of the Loan Documents was established in part by the Texas Constitution. *See ante* at p. 12. This statement is incorrect. The nonrecourse status of the Loan Documents was established only by the unambiguous language of those documents. The Murphys and the Bank could have agreed that the Murphys are subject to personal liability under the Loan Documents. They did not do so because the Bank wanted the right to foreclose on the Murphys' homestead as allowed under article XVI, section 50(a)(6) of the Texas Constitution. *See* Tex. Const. art. XVI, § 50(a)(6). Nonetheless, the Texas Constitution does not establish the terms of the Murphys' debt; the Loan Documents perform that function.

The majority also cites *In re Mullin*, a case in which a bankruptcy court held that, under the plain meaning of the promissory note in an extension of credit under article XVI, section 50(a)(6) of the Texas Constitution, the debtors were not personally liable under the note for the creditor's attorney's fees. *See* 433 B.R. 1, 17 (Bankr. S.D. Tex. 2010). In *In re Mullin*, no party sought attorney's fees in a declaratory-judgment action regarding the extension of credit. *See id*. The *In re Mullin* case is not on point.

The majority cites several cases for the proposition that a request for declaratory relief, by itself, does not change the basic character of a lawsuit. *See ante* at p. 11. But, even before the Bank filed its counterclaim seeking declaratory relief, the basic character of the lawsuit already included a declaratory-judgment claim by the Murphys, which, by itself, allowed the trial court to award the Bank attorney's fees. *See Hallman*, 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.*, 2010 WL 2789016, at *21; *Bradt*, 905 S.W.2d at 759–60.

Without citing any case law supporting its holding, this court refuses to give effect to a Texas statute that, under its unambiguous language, vested the trial court with the power to award attorney's fees to the Bank. Under the Texas Constitution and the Texas Declaratory Judgments Act, the trial court had the authority to award attorney's fees to the Bank and against the Murphys, even though the Murphys were not personally liable under the Loan Documents. *See* Tex. Const. art. XVI, § 50(a)(6); Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Hallman*, 159 S.W.3d at 641–43; *Petroleum Analyzer Co., L.P.*, 2010 WL 2789016, at *21; *Aquaduct, L.L.C.*, 116 S.W.3d at 444–45; *Bradt*, 905 S.W.2d at 759–60. The trial court did not err in awarding attorney's fees to the Bank.

For the foregoing reasons, this court should affirm the trial court's award of attorney's fees to the Bank.   Because it fails to do so, I respectfully dissent.



/s/     Kem Thompson Frost
Justice

Panel consists of Justices Frost, McCally, and Mirabal.[10]  (Mirabal, S.J., majority).

---

[10] Senior Justice Margaret Garner Mirabal sitting by assignment.